THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERITEK USA, INC., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>CONCEPTRA BIOSCIENCES, LLC, *et al.*,<br><br>    Defendants. | CASE NO. C23-1090-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion to dismiss or compel arbitration (Dkt. No. 21), Defendants' motion to stay discovery (Dkt. No. 38), Plaintiffs' motion to stay arbitration (Dkt. No. 16), and Plaintiffs' motion to seal (Dkt. No. 34). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS in part and DENIES in part the motion to dismiss (Dkt. No. 21) for the reasons explained herein. The motions to stay discovery and stay arbitration (Dkt. Nos. 16, 38) are DENIED as moot. Plaintiffs' motion to seal (Dkt. No. 34) is GRANTED.

I.   BACKGROUND

This action arises out of a Development and Supply Agreement ("agreement") between Ameritek USA, Inc. ("Ameritek") and Conceptra Biosciences, LLC ("Conceptra"). (Dkt. No. 10 at 2.) The parties intended to partner for the development of a medical product, using Ameritek's

previously developed intellectual property. (*Id.*) Ameritek's president, Dr. Kuo-Ching Yee ("Dr. K.C. Yee") negotiated and entered into the agreement with Conceptra's president, Gary Gamerman. (*Id.*) However, Plaintiffs now contend that the agreement was one-sided and included an unreasonably burdensome arbitration provision, onerous penalty provisions, and other unenforceable and unconscionable provisions. (*Id.*) Plaintiffs allege that Mr. Gamerman, an experienced attorney, took advantage of the 89-year-old, Dr. K.C. Yee. (*Id.* at 1–2.) Mr. Gamerman did so to pilfer Dr. K.C. Yee's company, which he operated with his sons, Dr. H.P. Yee and Dr. H.C. Yee. (*Id.*)[1] After the parties executed the agreement, Mr. Gamerman declared Ameritek's product unacceptable and purported to terminate the agreement, all while plotting to trigger the agreement's arbitration clause. (*Id.* at 2.) In June 2023, Defendants filed a JAMS arbitration demand based on Plaintiffs' alleged breach of this contract. (*Id.* at 3, 9.) In doing so, Defendants sought the exclusive use of Ameritek's patent, among other forms of relief. (*Id.*)

In their First Amended Complaint ("FAC"), Plaintiffs specifically assert causes of action for (1) procedural and substantive unconscionability with respect to the arbitration clause and related clauses, (2) procedural and substantive unconscionability with respect to the contract, (3) unjust enrichment/conversion, (4) quantum meruit/unjust enrichment, (5) declaratory judgment, and (6) negligent misrepresentation, interference with contractual performance, and abuse of process. (*Id.* at 11–23.)[2] In response, Defendants filed a motion to dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6), or in the alternative, to compel arbitration. (Dkt. No. 22.) Because the Rule 12(b)(2) motion implicates the Court's jurisdiction over the case, the Court addresses it first.

---

[1] Ameritek, Dr. K.C. Yee, and the two sons are collectively referred to as "Plaintiffs." Conceptra, Gary Gamerman, and his wife Jane Doe Gamerman are collectively referred to as "Defendants."

[2] Technically speaking, the first two causes of action are affirmative defenses in a contract action or legal argument in support of another claim—not an independent affirmative claim for relief. *See, e.g.*, *Caraang v. PNC Mortg.*, 795 F. Supp. 2d 1098, 1116 (D. Haw. 2011); *Gaitan v. Mortg. Elec. Registration Sys.*, 2009 WL 3244729, slip op. at 13 (C.D. Cal. 2009).

## II. DISCUSSION

### A. Personal Jurisdiction

When a defendant moves to dismiss a case pursuant to Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the exercise of jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). If a Rule 12(b)(2) motion is supported only by written materials, such as the pleadings and affidavits, "the plaintiff need only make a *prima facie* showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). And the Court must resolve any conflicts in the documentary evidence in favor of the plaintiff. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). The Court will not, however, assume the truth of allegations in a pleading which are contradicted by an affidavit. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

To determine whether it has jurisdiction over a defendant, this like any federal court applies the law of the state in which it sits. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Here, Washington's long-arm statute grants courts the maximum jurisdictional reach permitted by the Due Process Clause. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004) (citing RCW 4.28.185). Thus, the Court must determine whether the exercise of jurisdiction over Defendants comports with due process limitations. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413 (1984). Due process allows this Court to exercise jurisdiction if doing so does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The extent and nature of contacts that a defendant has can result in either general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiffs appear to concede that this Court does not have general jurisdiction. (*See* Dkt. No. 39 at 5–13.)[3]

---

[3] General jurisdiction requires defendants to have contacts with the forum state that are "so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (cleaned up). Conceptra, a limited liability company, is not

| | |
|---|---|
| 1 | However, Defendants argue that the Court lacks specific jurisdiction as well. (Dkt. Nos. 22 at |
| 2 | 17–32, 44 at 1–7.) |
| 3 | The Ninth Circuit applies a three-part test to determine whether specific jurisdiction |
| 4 | exists over a non-resident defendant: |

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs. *Id.* The burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985). The first prong examines whether a defendant purposefully availed itself of the privilege of conducting activity in the forum state or has purposely directed its activities towards the state. "Purposeful direction" and "purposeful availment" are two distinct concepts; the former test *typically* applies to tort claims, while the latter test *typically* applies to contract cases. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023).

Defendants argue that because Plaintiff's claims sound in contract, the relevant inquiry is whether Conceptra purposefully availed itself of the privilege of conducting activities in Washington. (Dkt. No. 22 at 10.) But under Ninth Circuit case law, there is no "rigid dividing line between these two types of cases." *Id.* Instead, "the first prong 'may be satisfied by

---

registered to do business in Washington and does not have any offices or employees in state. (*See* Dkt. No. 10 at 4.) And Mr. Gamerman and Jane Doe Gamerman are not domiciled in Washington. (*Id.* at 3–4.) Thus, the Court lacks general jurisdiction over Defendants.

ORDER
C23-1090-JCC
PAGE - 4

purposeful availment,' 'by purposeful direction,' or 'by some combination thereof.'" *Id.* (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). Both tests ask whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (citation omitted).

Plaintiffs fail to establish specific jurisdiction under either test. While the FAC references Defendants' Washington contacts, they are minimal. It states that Mr. Gamerman "'negotiated' an agreement with the senior Dr. Yee in Washington State." (Dkt. No. 10 at 3.) When given the opportunity to expand on their assertion in their briefing to this Court, Plaintiffs contend that Mr. Gamerman met with the senior Dr. Yee twice in Washington before they executed the agreement. (Dkt. No. 39 at 8.) This is insufficient to fulfill the first factor of the jurisdictional test. An out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985). Instead, courts evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479.

Here, nothing in the pleadings suggest that the parties contemplated significant Washington dealings. *Cf. id.* at 479–80 (long-term franchise agreement contemplated continuing and wide-reaching contacts); *Corporate Inv. Business Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir. 1987) (continuing benefits would be derived from association with franchisor in forum state). Outside of Mr. Gamerman's two alleged Washington visits, the bulk of the parties' communications occurred over the phone and in writing. (Dkt. Nos. 10 at 6, 8, 39 at 3–4.) Fundamentally, Mr. Gamerman's brief presence in Washington is not sufficient to overcome the lack of any indicia of a calculated effort, by Defendants, to conduct business in Washington. *See FDIC v. British-American Ins. Co.*, 828 F.2d 1439, 1443 (9th Cir. 1987) ("[Defendant's] key nexus to [the forum state]—the temporary physical presence . . . in [the state]—is not sufficient to overcome the lack of any indicia of a calculated effort by [Defendant] to conduct business in

[the state]."). Under the terms of the agreement, Ameritek's performance was to take place in China, the agreement is governed by Delaware law, and disputes are to be settled by binding arbitration in Illinois. (Dkt. No. 10 at 34, 38–39). None of this establishes a purposeful availment or direction towards Washington.

Plaintiffs attach some significance to the fact that Mr. Gamerman reached out to the senior Dr. Yee, a Washington resident, and Ameritek, a Washington company, to conduct business with them. (*See* Dkt. No. 39 at 7–8.) But as the Supreme Court explained in *Walden v. Fiore*, 571 U.S. 277, 290 (2014), "a lawsuit that is not tethered to [the forum state] in any meaningful way"—aside from the plaintiff's residency—does not confer jurisdiction over the defendant. Concluding otherwise would allow a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis—an approach the Supreme Court has expressly rejected. *See id.* at 289. It would also obscure the reality that none of Defendants' challenged conduct had anything to do with Washington itself. *See id.*

In sum, Mr. Gamerman's two alleged Washington meetings with Dr. K.C. Yee appear to be the type of "random," "fortuitous," or "attenuated" contact which is insufficient to support jurisdiction, at least without violating the principles of fair play and substantial justice. *Burger King Corp.*, 471 U.S. at 486.

Accordingly, the Court FINDS that the FAC fails to demonstrate this Court's personal jurisdiction over Defendants.[4] In addition, because Plaintiffs expanded on their jurisdictional allegations in their opposition brief (*See* Dkt. No. 39 at 3–13) and are still unable to convince the Court that it holds specific jurisdiction over Defendants, the Court concludes that neither amended pleadings nor jurisdictional discovery would establish personal jurisdiction in Washington. *See, e.g.*, *Missouri ex rel. Koster v. Harris*, 849 F.3d 646, 656 (9th Cir. 2017)

---

[4] Since Plaintiffs have failed to meet their burden under the first prong for specific jurisdiction, the Court need not address the second or third prongs of the test. *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

1  (describing futility standard for Rule 15 motions). However, because another court with appropriate jurisdiction could resolve their dispute, the Court DISMISSES Plaintiffs' claims without prejudice. *See Grigsby v. CMI Corp.*, 765 F.2d 1369, 1372 (9th Cir. 1985)).

### B. Motion to Seal

Plaintiffs move to seal (Dkt. No. 34) their reply in support of Plaintiffs' motion to stay arbitration (Dkt. No. 35). While the public has a common law right to inspect and copy public records, including those from judicial proceedings, these rights are not absolute. They must yield when (1) sealing a document serves a compelling interest, (2) that is substantially likely to be harmed if the document is not sealed, and (3) there are no less restrictive alternatives for protecting the interest. *See United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017). Given the nature of the information contained in the document at issue, these criteria are met here. Accordingly, the motion to seal (Dkt. No. 34) is GRANTED and the Clerk is DIRECTED to maintain Docket Number 35 under seal.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 21) is GRANTED in part and DENIED in part. Defendants' motion to stay discovery (Dkt. No. 38) and Plaintiffs' motion to stay arbitration (Dkt. No. 16) are DENIED as moot. Plaintiffs' motion to seal (Dkt. No. 34) is GRANTED and the Clerk is DIRECTED to maintain Docket Number 35 under seal. The case is DISMISSED without prejudice.

DATED this 6th day of October 2023.

John C. Coughenour
UNITED STATES DISTRICT JUDGE